IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| GARY A. ORAM, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV03-249-S-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER** |
| | ) | |
| CHAPLIN HULIN, ACTING CHAPLAIN, and FOOD SERVICE OFFICERS, ICC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The motions now ripe for adjudication in this civil rights action are as follows: Plaintiff's Supplemental Motion (Docket No. 34), Plaintiff's Motion for Summary Disposition (Docket No. 38), Plaintiff's Motion to Introduce Evidence (Docket No. 39), and Defendants' Motion for Summary Judgment (Docket No. 44). Having reviewed the record in this case, the Court finds that oral argument is unnecessary. Accordingly, the Court enters the following Order.

**MEMORANDUM ORDER  1**

I.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**A.     Background**

Plaintiff alleges that Defendants denied him a religious vegetarian diet from October 2002 to February 2003, a period of four months.  He brings free exercise and equal protection claims under the First and Fourteenth Amendments.  The only Defendants who have been served with the Amended Complaint and who have answered are Correctional Corporation of America (CCA), Idaho Correctional Center (ICC) Warden Jeff Conway, and ICC Interim Acting Chaplain Holt.  Because Plaintiff has had ample opportunity to serve all other Defendants, claims against the unserved Defendants are dismissed.

**B.     Standard of Law Governing Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors*

**MEMORANDUM ORDER  2**

*Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)).  If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party.  To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 377 U.S. at 322.  The existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby*, 477 U.S. at 252.

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute.  To state a claim under § 1983, a plaintiff must come forward with facts showing the existence of four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law."  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

C.  **First Amendment Claim - CCA/ICC**

The First Amendment free exercise of religion clause absolutely protects the right

**MEMORANDUM ORDER  3**

to believe in a religion; it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296 (1940). Inmates clearly retain their free exercise of religion rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). An inmate who is an adherent of a minority religion must be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972).

Challenges to prison restrictions that are alleged "to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125 (1977) (citation omitted). The courts, therefore, must balance prisoners' First Amendment rights against the goals of the correctional facility. *Bell v. Wolfish*, 441 U.S. 520 (1979).

In this case, Defendant Hulin served as the ICC Chaplain until November 21, 2002, when he was terminated. After Hulin's termination, Warden Conway appointed Defendant Holt to be the acting Chaplain to take care of administrative requests related to religion, but not to give religious counseling. Holt served until January 21, 2003, when David Booth was hired as the new Chaplain. *See Jeff Conway Affidavit*, ¶¶ 3-8 (Docket No. 43).

On November 10, 2002, Plaintiff filed a grievance that stated that he had asked

**MEMORANDUM ORDER  4**

then-Chaplain Hulin for authorization to have a religious diet, and that Hulin refused the diet. Hulin had responded to the grievance by stating that he had denied the diet request because he did not believe that Plaintiff's religious beliefs were sincere based on Hulin's observation that Plaintiff professed to be of a certain sect but did not attend the religious services of that sect. Chaplain Hulin was terminated on November 21, 2002.[1]

At the next level of appeal, the reviewing officer agreed with Chaplain Hulin's reasoning and denied the appeal. Warden Conway was the final level of appeal, and he overturned the previous denial, granting the grievance on November 26, 2002, stating that Plaintiff needed to "get with the Chaplain" to be able to start the religious diet. *See Jeff Conway Affidavit*, Exhibit A (Docket No. 43).

On December 6, 2002, Plaintiff filed an inmate concern form with Interim Acting Chaplain Holt, informing him that the Warden had approved his religious diet. *See Amended Complaint*, unmarked exhibit (Docket No. 16). On December 7, 2002, Holt responded in writing to the inmate concern form, instructing Plaintiff to meet with him in the Chapel. Plaintiff refused to meet with Holt. *See Amended Complaint*, at p. 9 (Docket

---

[1]The reasons for termination are unknown.

**MEMORANDUM ORDER  5**

No. 16). Holt's Interim Acting Chaplain position ended on January 31, 2003. By February 8, 2003, Plaintiff had received a religious diet memo.

Plaintiff earlier voluntarily dismissed Defendant Hulin from this lawsuit. There is no evidence showing that Warden Conway was aware of Plaintiff's problems before Conway reviewed the grievance on or about November 26, 2002. At that time, Conway agreed with Plaintiff and told him to meet with the Chaplain about the religious diet. No liability arises from Warden Conway's act to approve the diet. Plaintiff sent an inmate concern form to Chaplain Holt nine days later; Chaplain Holt answered in writing two days later; however, Plaintiff refused to meet with Chaplain Holt. Based upon this time line, Plaintiff's failure to obtain a religious diet is a result of his own failure to respond to Chaplain Holt so that a religious diet could be set up for Plaintiff. Chaplain Holt has no liability for Plaintiff's own actions in failing to follow through to obtain the religious diet. The evidence shows that Chaplain Holt responded promptly and appropriately to Plaintiff's request.

Plaintiff argues that CCA/ICC and Warden Conway were negligent in failing to immediately hire a new chaplain. Warden Conway asserts, and the Court agrees, that it was reasonable for the prison to place an advertisement for the chaplain position and take time to interview candidates; it was also reasonable to appoint an interim chaplain to handle administrative issues like Plaintiff's diet while the interview process was continuing. In any event, these facts support no ground for relief. Negligence cannot be the basis for a § 1983 claim. *Daniels v. Williams*, 474 U.S. 327 (1986). Neither may

**MEMORANDUM ORDER  6**

Plaintiff sue Defendants for common law negligence, a state cause of action, without any proof that he has met the Idaho Tort Claims Act (I.C. § 6-906, *et seq.*) requirements. The remainder of Plaintiff's arguments contained in his Opposition to Defendants' Motion for Summary Judgment are unsupported by law.

The Court now turns to Defendants ICC and CCA, private entities claiming entitlement to the rule that a municipality may not be held liable under a respondeat superior theory in a civil rights action. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). The majority of courts confronting this issue have determined that the *Monell* rule *does* apply to bar respondeat superior liability where defendants are private entities.[2]

Under *Monell*, requisite elements of a § 1983 claim against a municipality (or entity) are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality (or entity) had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (internal quotation marks omitted)). An unwritten policy or custom must be so "persistent and widespread" that it

---

[2]*See, e.g., Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *Powell v. Shopko Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Ibarra v. Las Vegas Metro. Police Dep't*, 572 F.Supp. 562, 563-645 (D. Nev. 1983); *Taylor v. Plousis*, 101 F.Supp.2d 255, 263-64 (D. N.J. 2000); *Whalen v. Correction Medical Service*, 2003 WL 21994752 (D. Del. 2003).

**MEMORANDUM ORDER  7**

constitutes a "permanent and well settled city policy." *Monell v. Dept. of Soc. Serv. of N.Y.*, 436 U.S. at 691. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted).

In rare instances, custom can be inferred from one incident or related incidents occurring on one day. *McRorie v. Shimoda*, 795 F.2d 780 (9th Cir. 1986) (plaintiff claims that prison officer seriously injured him and twenty-eight other prisoners during a shakedown and that officer was acting under orders of his superiors). In *McRorie*, the Ninth Circuit held that, in extraordinary circumstances, a custom can be inferred when acts, if proven, "reflect a disposition to disregard human life and safety so prevalent as to be policy or custom." *Id*. at 784 (internal citation and punctuation omitted).

Alternatively, to state a claim for municipal or entity liability, a plaintiff can allege facts showing that "officials responsible for establishing final policy with respect to the subject matter in question" made "a deliberate choice to follow a course of action . . . from among various alternatives," thereby causing the violation of civil rights. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Plaintiff has not shown that the refusal to provide him with a religious diet was the result of any policy of CCA/ICC or its final policy decision makers. Particularly, there is evidence in the record showing that CCA/ICC *did* serve religious diets to inmates. Plaintiff includes in his exhibits a memorandum showing that Acting Chaplain Holt

**MEMORANDUM ORDER  8**

ordered a vegetarian religious diet for 35 inmates on December 26, 2002.  S*ee Plaintiff's Motion to Introduce Evidence*, Unmarked Exhibit page 20 (Docket No. 39).  Plaintiff's Grievance also shows that there was a policy to allow religious diets (Directive 403.02.01.001), but that former Chaplain Hulin did not believe that Plaintiff fit the criteria for a religious diet.  *See Complaint*, Unmarked Exhibit, page 20 (Docket No. 3).  The prison utilized religious diet request forms, showing that there was a standing policy for allowing three different types of religious diets.  *See id.*, Unmarked Exhibit, page 15.

Based on the reasoning of *Monell* and subsequent cases which have extended that doctrine to private entities, the Court agrees with Defendants that CCA/ICC cannot be held liable to Plaintiff either on a respondeat superior theory or on the argument that Defendants had a policy or custom of refusing religious diets to inmates.  This claim is subject to summary judgment.

**D.     Fourteenth Amendment Claim**

Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities.  *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920).[3]  Plaintiff has brought forward nothing to show that he was treated dissimilarly from other inmates.  Plaintiff's request was evaluated by Chaplain Hulin, and

---

[3] Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin,  or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution.  *See, e.g., City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985).

**MEMORANDUM ORDER  9**

Hulin determined that Plaintiff did not qualify for a religious diet based upon particular facts. Equal protection does not mean that every person who seeks a religious diet will obtain one; it means simply that persons will be evaluated on the same criteria. Plaintiff's request was denied because the religious volunteer for his particular sect could not identify Plaintiff as a part of the sect, and because Hulin did not believe that Plaintiff was attending the sect's meetings.

Turning to Acting Chaplain Holt, the Court finds that there is nothing in the record suggesting that Holt was ever aware of Plaintiff's request or grievance. Therefore, Holt could not have treated Plaintiff dissimilarly. When Warden Conway instructed Plaintiff to meet with Acting Chaplain Holt to obtain a religious diet, Plaintiff refused to see Holt. Plaintiff has not brought forward sufficient facts showing that he was treated differently from other inmates.

As discussed above, there is nothing in the record suggesting that Warden Conway knew about Plaintiff's complaints until Conway reviewed the grievance and granted the request. Therefore, no equal protection claim arises from the facts applicable to Warden Conway. Similarly, there are no facts showing that an equal protection claim lies against ICC/CCA. Accordingly, Plaintiff's equal protection claim fails.

## II.

## PLAINTIFF'S MOTIONS

A.   **Plaintiff's Supplemental Motion to Rule 31**

**MEMORANDUM ORDER  10**

Plaintiff asserts that Defendants have not supplemented their discovery responses to his earlier requests. Defendants respond that they provided Plaintiff with any supplemental documents in their possession, and that no other documents are available. Plaintiff does not dispute this contention. Therefore, the Court will consider his request moot.

B.  **Plaintiff's Motion for Summary Disposition**

Plaintiff contends that he is entitled to summary disposition in his favor because Defendants' counsel failed to obtain leave of Court to hold Plaintiff's deposition at the prison. The Court disagrees. Depositions are a regular and necessary part of litigation. The purpose of a Court order is to require the prisoner's custodian to produce the prisoner for deposition. Plaintiff's other arguments are not proper bases for summary disposition in his favor.

C.  **Plaintiff's Motion to Introduce Evidence**

Plaintiff's Motion to Introduce Evidence appears to contain the supporting exhibits for his Motion for Summary Disposition. Accordingly, the Motion is granted. The Court has considered the exhibits in determining the pending motions.

### III.
### ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

**MEMORANDUM ORDER  11**

A. Plaintiff's Supplemental Motion (Docket No. 34) is MOOT.

B. Plaintiff's Motion for Summary Disposition (Docket No. 38) is DENIED.

C. Plaintiff's Motion to Introduce Evidence (Docket No. 39) is GRANTED.

D. Defendants' Motion for Summary Judgment (Docket No. 44) is GRANTED.

E. All claims against the served Defendants are DISMISSED with prejudice; claims against the unserved Defendants are DISMISSED without prejudice, but remain subject to any statute of limitations or other defenses.

DATED: **June 20, 2005**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER 12**