IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| GARY A. ORAM, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV03-249-S-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER** |
| | ) | |
| CHAPLIN HULIN,[1] ACTING | ) | |
| CHAPLAIN, and FOOD SERVICE | ) | |
| OFFICERS, ICC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court is Defendant Paul Hulen's Motion for Summary Judgment (Docket No. 85).  Having reviewed the record in this case, the Court concludes that oral argument is unnecessary.  Accordingly, the Court enters the following Order.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**A.     Background**

Plaintiff's claims arise from his former incarceration at the Idaho Correctional Center (ICC), a private prison that contracts with the Idaho Department of Correction (IDOC) to

---

[1]  The proper spelling of Defendant Hulin's surname is "Hulen."

**ORDER  1**

house Idaho inmates.  Plaintiff alleges that he requested a special diet in compliance with the tenets of his religious beliefs as a member of the Seventh Day Adventist Church.  Plaintiff alleges that Defendant Hulen, chaplain of ICC, denied his request for a religious diet in violation of his First and Fourteenth Amendment rights.

Plaintiff was transferred to ICC on October 2, 2002.  He first made an oral request for a religious vegan diet.  On October 10, 2002, he sent an inmate concern form to Defendant Hulen.  Plaintiff wrote: "I still need the vegan diet if at all possible.  I attend a service but not the right one."  Hulen wrote back: "As you said you do not belong to a religious group that requires a religious diet."  *Affidavit of Paul Hulen*, Exhibit D (Docket No. 87-5).

Hulen asserts that it was his practice to check with the religion's volunteer leader and to check the religion's meeting sign-in sheets to determine whether an inmate was a member of that religion.  The meeting sign-in sheets did not show Plaintiff's name, and Reverend Tim Gray, the Seventh Day Adventist volunteer, informed Hulen that he did not know Plaintiff.  Based on that information, Hulen denied the request.

On November 2, 2002, Plaintiff submitted another inmate concern form to Hulen, requesting a nonpork diet if a vegetarian diet was not approved.  Plaintiff wrote: "I've requested a religious diet 3 times, once verbally and twice written.  If you won't provide me with a vegetarian diet, a diet before arriving here I been on for over a year, at least provide me with a non-pork diet, a diet I've been on before living here for almost 3 years, I've showed you the paperwork and met all your requirements, 7th Day Adventist."
Hulen responded: "I base diets on policy 403.02.01.001.  The volunteer does not recognize

**ORDER  2**

you as a part of the religion.  Unless I am mistaken you have not been taking part in religious services."  *Affidavit of Paul Hulen*, Exhibit E (Docket No. 87-5).

On November 11, 2002, Plaintiff submitted another inmate concern form, stating: "This is the 4th attempt for my written request for a religious diet I've adhered to and been on my entire incarceration at ICI-O, IMSI, and ISCI[2].  You've neglected to answer two of my requests.  However at this time I hope you would put me on a non-pork diet.  I've already proven my faith."  Defendant responded: The volunteer does not know you.  It is hard to be part of a group when they do not know who you are."

Defendant Hulen alleges that he recognized, based on his experience working in prisons, that some inmates request religious diets even though they do not have a sincerely-held religious belief about the need for the diet.  As a result, Defendant Hulen did not automatically grant requests for religious diets, but required that proof be given to him that the religious belief was sincerely held.  While at the prison, Defendant Hulen regularly authorized religious diets for Seventh Day Adventists, recognizing that it is a recommended but not mandated practice of that religion.  In this case, Plaintiff eventually received the diet when he filed a grievance appeal with Warden Jeff Conway.

---

[2] ICI-O is the acronym for Idaho Correctional Institution-Orofino; IMSI, the Idaho Maximum Security Institution; and ISCI, the Idaho State Correctional Institution.

**ORDER  3**

**B.      Standard of Law for Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party.  To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party.  All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails

**ORDER  4**

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

**C.    Plaintiff's First Amendment Free Exercise Claim**

1.    <u>General Standard of Law</u>

The First Amendment Free Exercise of Religion Clause absolutely protects the right to believe in a religion; it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296 (1940). Inmates clearly retain their free exercise of religion rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

Challenges to prison restrictions that are alleged "to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125 (1977) (citation omitted). The courts, therefore, must balance inmates' First Amendment rights against the goals of the correctional facility. *Bell v. Wolfish*, 441 U.S. 520 (1979). Particularly, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 87 (1987). To make such a determination, a court reviews four factors: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest

**ORDER  5**

put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" exist. *Id*. at 89-90.

Two threshold questions must be answered before a court can undertake a *Turner* analysis. First, an inmate must show that his claim is "rooted in religious belief," as opposed to "purely secular philosophical concerns," and, second, the professed belief "must be sincerely held." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (internal punctuation omitted). It is a well-established principle that inmates have a right to a religious diet "with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987).

2.    Whether the Belief Was Religious

Both of the threshold questions seem to be at issue in this case. Plaintiff told Hulen that his request for a special diet was rooted in his Seventh Day Adventist religion, and that he had practiced this diet for approximately three years at ICI-O, IMSI, and ISCI. However, he also admitted that, when he arrived at ICC, he was attending other religious services, not Seventh Day Adventist services. Hulen questioned whether Plaintiff's request for the diet was religious because Plaintiff did not appear to be practicing the Seventh Day Adventist religion with other members of the sect, as verified by the Seventh Day Adventist volunteer.

A difference of beliefs among members of the same religion does not necessarily mean that one of those views is nonreligious. *Thomas v. Review Board of the Indiana*

**ORDER  6**

*Employment Security Division*, 450 U.S. 707, 715-16 (1981) ("it is not within the judicial function and judicial competence to inquire whether the petitioner or [another member of his faith] more correctly perceived the commands of their common faith").   Court are not permitted to  "[w]eigh[] the unanimity of [Department of Correction] religious authorities' opinion" on a particular religious belief "against [the prisoner's] assertion to the contrary." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003).   In other words, "[t]he opinions of [Department of Correction] religious authorities cannot trump the plaintiff's sincere and religious belief." *Id*. at 590.

Based on the facts and the law, the Court finds that Plaintiff has raised a genuine issue of material fact as to whether Hulen violated his First Amendment rights by failing to take appropriate steps to determine whether Plaintiff's belief was rooted in religion.  Plaintiff argues that despite his proven history of Seventh Day Adventist observance, Hulen ignored his repeated requests for a religious diet.  Defendant Hulen may have relied solely on the Seventh Day Adventist volunteer to define the tenets of the religion, *i.e.*, reading into the religion a requirement of attendance at Seventh Day Adventist services, while disregarding Plaintiff's assertions.  On the other hand, Hulen may be able to show that Plaintiff had abandoned his Seventh Day faith and was practicing a different religion that did not require a special diet.  These are disputed issues of material fact that cannot be resolved on summary judgment

The Court now proceeds to the second threshold issue, which is related to the first, whether his rights were violated when Defendant Hulen determined that he did not have a

**ORDER  7**

sincerely held belief.

3.    Whether the Belief Was Sincerely Held

If Plaintiff's request for a religious diet was firmly rooted in religion, the next question is whether Plaintiff's religious beliefs were sincerely held.  If a "request for a particular diet is not the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request."  *DeHart v. Horn*, 227 F.3d 47, 52 (3rd Cir. 2000).  "It is in this way that prisons are protected from random requests for special diets by inmates whose alleged dietary restrictions are not the result of their religious convictions but rather their secular predilections."  *Id.*  In *DeHart*, the Third Circuit noted:

> [P]rison officials are, of course, entitled both to make a judgment about the sincerity and religious nature of the inmate's belief when he or she asks for different treatment and to act in accordance with that judgment.  If the request is not a constituent part of a large pattern of religious observance on the part of the inmate, for example, the asserted religious basis for the request may be rejected as a pretext.

*Id.* at n.3.

Evidence of "backsliding" or nonobservance of some of the  tenets of the religion a prisoner professes to believe in "is relevant on the question of sincerity," but it is not

**ORDER  8**

conclusive. *Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988). The Seventh Circuit observed:

> The fact that a person does not adhere steadfastly to every tenet of his faith does not mark him as insincere. Some religions place unrealistic demands on their adherents; others cater especially to the weak of will. It would be bizarre for prisons to undertake in effect to promote strict orthodoxy, by forfeiting the religious rights of any inmate observed backsliding, thus placing guards and fellow inmates in the role of religious police.

*Id*.

Defendant Hulen asserts that he did not see sufficient evidence that Plaintiff was an adherent to the Seventh Day Adventist religion. Plaintiff counters this argument by arguing that he provided adequate proof to Defendant that he had been on a Seventh Adventist diet for several years prior to his arrival at ICC, including (1) a letter from his religious sponsor dated March 30, 2000; (2) an ICI-O diet memo dated September 20, 2002; (3) and ISCI diet memo dated September 20, 2002; and (4) an IMSI diet memo dated June 13, 2000. *See Plaintiff's Counterstatement of Material Facts* (Docket No. 90).

These items tend to show that Plaintiff adhered to a non-pork diet for religious reasons for years preceding his request to Defendant Hulen for a religious diet. Therefore, they call into question whether Defendant Hulen failed to appropriately determine whether Plaintiff was a sincere adherent to his professed faith. Defendant Hulen questions whether Plaintiff actually showed these documents to him, but Plaintiff refers to "documents" in his concern form of November 2, 2002. *See Affidavit of Paul Hulen*, Exhibit E (Docket No. 87-5). A genuine issue of material fact exists as to whether Hulen saw and ignored this evidence of

**ORDER 9**

Plaintiff's religious belief.  This issue involves the credibility of the parties, something that cannot be determined on summary judgment.

Because the threshold questions in this case remain at issue, the Court need not proceed to a *Turner* analysis.  In addition, because the prison regularly offered a special diet to adherents of the Seventh Day Adventist religion during Plaintiff's incarceration, the *Turner* analysis is a nonissue in this case.

**D.      Equal Protection Claim**

Plaintiff also alleges that the failure to provide him with a special diet violates his equal protection rights under the Fourteenth Amendment.  Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920).  However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Plaintiff alleges that while Defendant Hulen refused to provide Plaintiff with a special diet, Hulen provided Inmate Dorgan with a special diet.  Both inmates claim to be Seventh Day Adventists.  However, Plaintiff has failed to show disparate treatment.  Dorgan states that when he arrived at the ICC in November, his request for a Seventh Day Adventist diet was denied because he had to prove that the diet was for a religious reason.  When Dorgan proved to Hulen's satisfaction that the diet request was for a religious reason, he received the special diet. *See Exhibit to Plaintiff's Opposition*, at p. 9 (Docket No. 89).  The record reflects that Defendant Hulen prepared a memorandum to Food Service, requesting that

**ORDER  10**

Dorgan be placed on a religious vegetarian diet on December 26, 2002.  *See id.*, at p. 10.

Dorgan began receiving the special diet in January.  Because Plaintiff, too, was asked to

prove that his request was for a religious reason before he could receive the special diet, his

argument that he was treated differently from Inmate Dorgan is unsupported.

   As a result of the foregoing, Plaintiff has not shown that he has any facts that would

support an equal protection claim.  As a result, Defendant is entitled to summary judgment

on this claim.

**E.    Damages**

   The Ninth Circuit has recently clarified the issue of damages in the setting of a

prisoner First Amendment claim:

> The purpose of § 1983 damages is to provide compensation for injuries
> caused by the violation of a plaintiff's legal rights. *Memphis Com. Sch. Dist.
> v. Stachura*, 477 U.S. 299, 307, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986).
> Accordingly, no compensatory damages may be awarded absent proof of
> actual injury. *Id.* at 308, 106 S.Ct. 2537 ("Where no injury [is] present, no
> 'compensatory' damages [can] be awarded."). Moreover, "the abstract value
> of a constitutional right may not form the basis for § 1983 damages." *Id.* at
> 307, 106 S.Ct. 2537 (citing *Carey v. Piphus*, 435 U.S. 247, 255, 98 S.Ct. 1042,
> 55 L.Ed.2d 252 (1978)).

*Phillips v. Hust*, 477 F.3d 1070, 1080-81 (9th Cir. 2007).  "[C]ompensatory damages may

include not only out-of-pocket loss and other monetary harms, but also such injuries as

impairment of reputation, personal humiliation, and mental anguish and suffering." *Memphis*

**ORDER  11**

*Community School Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (internal punctuation and citation omitted).

The Ninth Circuit has determined that 42 U.S.C. § 1997e(e) -- which precludes damages for emotional distress unless there is a showing of physical injury -- does *not* apply to First Amendment claims. *Id*. at 1082 n.6 (citing *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998)). Therefore, Plaintiff may pursue compensatory damage in this action, although it is uncertain what amount a jury would award for the harm if he prevailed.

Punitive damages are available only where a plaintiff can show that "a defendant's conduct [was] motivated by evil motive or intent, or [] involve[d] reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). This is a difficult showing to make. Because Plaintiff is seeking damages for a relatively short period of time and because neither party has a sure chance of prevailing at trial, this case appears ripe for the parties to consider settling the remaining claim, taking into consideration the relative costs and risks of proceeding to trial.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant Hulen's Motion for Summary Judgment (Docket No. 85) is GRANTED as to Plaintiff's Equal Protection claim, and DENIED as to Plaintiff's First Amendment claim.

IT IS FURTHER HEREBY ORDERED that the parties shall contact Denise Asper, the Court's Alternative Dispute Resolution (ADR) Director, at 334-9067, to obtain a date for a settlement conference. The parties are also encouraged to try to settle this case between

**ORDER 12**

themselves prior to the settlement conference.  If the case settles before the date of the settlement conference, the parties shall immediately notify the ADR Director so that the conference can be vacated.

IT IS FURTHER HEREBY ORDERED that Plaintiff shall cease filing letters or other documents containing threats to this Court or to counsel and the parties in this litigation.  *See Plaintiff's Letter of June 10, 2007* ("God Himself[] will send an unholy wrath to plague this particular Court.") (Docket No. 96).   Plaintiff is placed on notice that any further communication that can be perceived as a threat to the Court or to any counsel or party may result in sanctions, which may include dismissal of his case.

DATED:  **August 16, 2007**

~~Honora~~ble Edward J. Lodge
U. S. District Judge

**ORDER  13**